Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent the juvenile in this case. It's our position, Your Honors, that the government abused its discretion in ordering transfer of this juvenile, quite simply because the government did not establish its burden in improving the transfer within the best interest of society or in the best interest of this juvenile. As the Court is aware, there is a statutory presumption that presumes that juvenile treatment should be accorded. It is a presumption against transferring the juvenile. And in order to overcome this presumption, the government must establish, by a preponderance of the evidence, that the juvenile has no realistic chance of rehabilitation. In this case, the evidence established that Jordan, the juvenile, suffered from diagnosed and identified mental health problems caused by years and years of sexual and physical abuse. The evidence established that Jordan was amenable to treatment. Each one of the experts, the government experts as well as Jordan's experts, testified that he was not only amenable to treatment, but there was a likelihood that he could be treated. There was a likelihood that, in fact, he could be rehabilitated. The evidence established that there were at least two facilities that were capable of providing the treatment that Jordan needed. If he goes to juvenile and into treatment, is there an automatic release then upon his reaching a certain age, or does he have to be certified as rehabilitated? How does that work? He has five years, Your Honor, because he's between the age of 18 and 21, so he could be sentenced to up to five years. So if he doesn't respond to treatment despite the best efforts and the predictions of the experts, then he'd be released? I think that's fair to say, but I would also point out that the experts all believed that he could be successfully treated within that period of time. And is it permissible for the district court to weigh the risk that they may prove to be wrong, since nobody can assure that he will be released? How much is the district judge allowed to weigh that in the balance, the uncertainty? I think that would go into the calculus of whether or not it was likely that the juvenile could be rehabilitated. And if the evidence shows by preponderance of the evidence that it is, in fact, likely that the juvenile could be rehabilitated, or there was, I guess, maybe a lower standard, there's a realistic chance that he could be rehabilitated, then that is where your question comes into the weighing process, would be our position. Now, the factors that I just outlined were, they were, I think, undisputed. I don't think that the government has any dispute with the evidence. What the government did do, however, was, and the government, quite frankly, was very clear on its position. It maintained that the crime in and of itself was the factor that should mandate this juvenile's transfer. And as I stated in the briefs, I think that if you take that position, and I think that that's the position that the district court took as well, in ordering Jordan's transfer, essentially what you're looking at here is a mandatory transfer provision. Although certainly there is, the district court has some discretion in how to weigh the various factors and what weight to place on the various factors, I think that the district court here erred, in large part, among other ways, in essentially making the nature of the offense here the dispositive issue. There are a number of cases that I cited in my brief where juveniles have been charged with similar crimes, some first-degree murder, and maybe the facts in those cases were even worse, where the district courts weighed all of the factors and came to a different conclusion. Now, realizing that the abuse of discretion standard doesn't necessarily look at so much the correctness of the decision, but whether or not it's within a range of acceptance, I would still submit to this Court that the district court erred, because quite frankly, the evidence established that there was a likelihood that this juvenile could be rehabilitated within the time period allowed by the Federal Juvenile Delinquency Act. It established that.  Is it sufficient that he could be? I noticed that some of the treatments that the juvenile facilities offer are also offered in the adult. Is it what do you have to demonstrate, that the findings of the fact were clearly erroneous and that discretion was abused? Is that what you need to show to reverse this? Well, we're under an abuse of discretion standard, and so I submitted a 29J letter, and the abuse of the court can abuse its discretion in a number of different ways. And I think it would be our position that, quite frankly, the evidence just did not support the district court's conclusion. The district court came to the wrong conclusion, quite frankly, based upon the evidence. With some reservations, we don't necessarily dispute the district court's findings of facts, but what we dispute is the district court's ultimate conclusion here, that it just quite simply isn't supported by the facts. Don't we have to vacate and amend anyway, because the district court assumed the juvenile's guilt, and as one of the factors in a recent case that says that the district court errs if it believes that it must assume the guilt, as this Court found in its finding number 5, because it may or may not assume the guilt of the juvenile defendant? Judge, I'm familiar with the case. This, in fact, is the co-defendant of this juvenile. And I've tried to think of my response to that question, and the way I would respond is, notwithstanding that mistake, the district court's conclusion here was wrong. It was an abuse of discretion. I would also, I guess, point out my belief, and I've spoken about this with government counsel, but quite frankly, I think that if the court remands on that question, that the district court is going to come to the same conclusion. It's just not going to change. Well, but doesn't it change when you're weighing the factors? If you're, you know, if you don't assume the guilt of the juvenile, then the seriousness of the crime would weigh less. The fact that weighing of all of these factors. It could, yes. I would agree. I guess. You're just saying you don't think it will happen in this case. I don't think it will happen in this case. That's what I'm trying to say delicately. Is your judge? Same judge. Unless the court has any other questions, I'll reserve the remainder of my time. Thank you. Thank you. Good morning, Your Honors. Laurie Suk. I'm an assistant United States attorney for the District of Montana. I was counsel for the United States in the district court in both this case and the case of United States v. Juvenile that was decided by this court in June 22, 2006. The court is correct that a remand is necessary in this case because as was found in U.S. v. Juvenile, the district court here, relying upon the Nelson Second Circuit case did make the assumption that it had to assume that the offense was committed. And as the court in U.S. v. Juvenile stated, although it was very reasonable for the district court to proceed as it did without direct guidance at that time from this court, the court does not have to make that assumption and therefore should again reweigh the factors given the discretionary rather than mandatory nature of that factor. But the United States in this case would ask this court to do exactly what the U.S. v. Juvenile court did because the only error that the court made was that. In fact, in this case, the court did exactly what the Juvenile Delinquency Act requires. It considered all six factors, made findings on all six factors, and considered the rehabilitative purposes given this, the circumstances of this case, and found transfer was appropriate because the risk of harm posed in this case outweighed the juvenile's chance for rehabilitation. The standard here is whether the facts found by the district court were clear error and whether in the end that the district court abused its wide and broad discretion. And no factor is determinative, excuse me. Your opponent isn't challenging the facts. He's not challenging the facts. He's challenging the discretion. But my question is why shouldn't we have to vacate and send this case back for reconsideration by the district court under TJS? I understand the district court can't be punished too much for this because TJS came out after the district court made its decision. But I would like to find out from you whether you believe we have to apply TJS, even though it came out after the district court made its decision. And number two, if we have to apply TJS, why wouldn't we be required to remand so that the district court can make a determination whether or not it wishes to consider the likelihood of conviction in this crime in its matrix of things it's weighing to determine whether he should be tried as a juvenile or as an adult? That's exactly what I just stated, Your Honor. You do have to do that. Exactly in accord with U.S. v. Juvenile, you have to remand and allow the district court to reconsider this issue. Okay.  I missed that because you said this court could do it, and I thought you were taking the position that you don't have to remand. Oh, no, Your Honor. I apologize. No. You do have to remand, and the district court has to consider this again. But as you saw in TJS, the panel of the court that decided TJS, U.S. v. Juvenile, also did work with respect to the findings. Time out, time out, time out, time out. Because your time is going to run before we'll get another question in. Was TJS, did he have the same panel of experts and the same evaluation on likelihood of prospects for rehabilitation as this defendant? No, Your Honor. So there's a different record. So the prior panel really hasn't endorsed the judge's evaluation of this individual because this individual and his record wasn't before that panel. So my question goes to the argument that was made by counsel for this juvenile, that the uncontradicted expert opinions, including the government's endorsed witness, I guess, would be one way to put it, all agreed that he had reasonable prospects for rehabilitation. So on the face of that record, what are we supposed to make of the judge's weighing of his likelihood of rehabilitation when it's uncontradicted that he has good prospects? Your Honor, the final decision regarding transfer isn't in the hands of the experts. It's in the hands of the district court. In light of the evidence, though, in light of the evidence. In light of the evidence, though, those experts weren't considering all of the factors that the district court had to consider. They were considering whether this juvenile could be rehabilitated. The district court had a different job within its discretion to not only take that evidence, but the evidence regarding the nature of the offense, the criminal record of this juvenile, his intellectual development, all six of the factors. Put that into the calculus and make the decision. So the district court does not have to simply carte blanche adopt what the experts say, but must consider that and make findings that are appropriate to support its decision. And all of this is within its discretion. I understand that the previous panel wasn't considering this juvenile, but it was certainly considering a judge that did exactly the same thing in that case that it did here. Completely comply with the Federal Juvenile Delinquency Act by making findings on every factor and then exercising that discretion. And the decision here in the view of the United States was supported by the evidence. Absent the error. Now, that error does need to be factored in, and you can do that by remanding and allowing the district court to reconsider. The TGS panel says that the conclusion of its discussion of the need for remand says, but under the circumstances, which is that the district court, of course, was unaware of the assumption of guilt issue. It says, under these circumstances, and bearing in mind that the statute clearly intends a presumption of juvenile treatment and the government bears the burden of establishing that transfer is warranted, we hold that remand is in order. So he can reconsider in light of the assumption, the erroneous assumption of guilt. Now, the statute does, in fact, presume treatment. That's a presumption. It's not just a sort of level playing field. It comes in with a presumption under the statute of treatment, and then you have the experts who are there to weigh in on the issue of treatment. And you're saying, well, they aren't addressing all of the factors. That's true, but the government bears the burden of demonstrating why treatment is inappropriate, and I haven't quite yet heard you respond to the weight of these uncontradicted experts who all say that there's a good likelihood of successful treatment. Because it is uncontroverted, Your Honor. They did say that. But as the case law makes clear, one factor is not dispositive. The presumption is there, and then the government has to present evidence as to why transfer is appropriate. So then the six factors again come into play, and the government has been clear and candid from the start. The nature of the offense in this case and the criminal history of this defendant outweigh, pose a harm in this case that outweighs the chances for this juvenile to be rehabilitated. And that is what the district court found and believed that the government overcame the presumption and met its burden in this case. Now, the court can certainly reconsider that in light of the U.S. v. juvenile case, but in the framework of what the district court did here, it considered the presumption. The government acknowledged the presumption and we overcame it with evidence regarding the other factors. If there are no further questions, I would end my argument. I have one other question on the 5032. You didn't seek a 5032 direct transfer, and I was curious in relationship to this, it has nothing to do with the case, but there's a burglary involvement for accounting in relationship to 5032. The burglary occurred before the murder, but the conviction was for burglaries after the murder, as I understand it. Is that why 5032 does not apply? Well, that is exactly the case, Your Honor, and actually in the district court we did move for mandatory transfer. The only case in the federal circuit, the federal court system, that deals with this issue was a Southern District of New York district court case that went against the government on this issue, that the offense and the conviction had to be final, and because the burglary, the commission of it, and the conviction straddled this offense, we conceded that. Okay. But that you are absolutely right. Okay. I understand that now. Thank you. All right. Thank you. Do you have a few seconds to respond? A minute? Judge Wallace, I guess I would just point out on the mandatory transfer issue that district court case relied on cases that analyzed similar facts under the Armed Career Criminal Act and the career offender provisions, and so I think that's why the government conceded that issue, because that case was well taken. I would take issue with the government's position that the experts did not consider the six factors that the district court did. In fact, they did. And, in fact, the expert hired by the juvenile, in fact, if you look at her report, she specifically, under those exact headings, analyzed each and every one of those factors. So I think that the experts analyzed this juvenile's chances for rehabilitation in light of the factors under Section 5032, and that, in fact, was all of them. The other thing I have to say is I think that the government's right that no court has to accept carte blanche expert opinions, and we're not trying to advance that novel argument here today. But what the court does have to keep in mind here, as Judge Fischer pointed out, is that the government bore the burden, and the government, there was a presumption that the government had to overcome, and the government just quite simply didn't do that. All they did was they came in and said this crime was bad, and as government counsel stated, relied upon this juvenile's criminal history. But what I would note is that this juvenile's criminal history was similar in a number of respects to the case in United States v. Bad Marriage. And in that case, this Court characterized that type of criminal history as of one ravaged by substance abuse and not of a depraved criminal. That was an adult. This was a juvenile, a juvenile whose alcoholism and chemical dependency problems led to his criminal history and was, in essence, to be expected given his history of abuse. And that's what the experts said. All right. Thank you, counsel. Thank both counsel. United States v. Juvenile is submitted.
judges: Wallace, Wardlaw, Fisher